### A98A1981. ROBERSON v. GNANN.
(508 SE2d 480)

JOHNSON, Presiding Judge.

Julia Mae Shiggs became permanently incapacitated in August 1994, following a caesarean section performed by Dr. Speir N. Ramsey at Memorial Medical Center. After the surgery, Shiggs lapsed into a coma and died in December 1996. Before Shiggs' death, her court-appointed guardian filed a medical malpractice suit against Ramsey, the Medical Center and others. Attorneys David Roberson and John Woodall represented Mydell in the medical malpractice suit.

Subsequently, a suit was initiated by J. Hamrick Gnann, Jr., as administrator of Shiggs' estate, against Roberson, Woodall and others for their conduct in settling the medical malpractice suit. Gnann contended that Roberson engaged in acts of misconduct and was negligent in the handling of funds obtained from Memorial Medical Center and its excess insurance carrier following the settlement of the medical malpractice claim. The first five counts of Gnann's suit alleged claims against Roberson and Woodall for legal malpractice, money had and received, conversion, fraud, and civil RICO. The sixth count sought a receivership for Roberson.

Gnann's suit was filed on May 22, 1997, and service was perfected upon Roberson on May 27, 1997. The parties entered into settlement discussions and agreed that Roberson would not be required to file an answer until settlement discussions ended. The agreement was not filed with the trial court. A settlement deadline of October 31, 1997, purportedly was established. The parties filed three stipulations partially implementing their general agreement. Discovery and settlement negotiations continued during these periods.

---

[10] See *In the Interest of J. D. G.*, 207 Ga. App. 698, 700 (3) (429 SE2d 118) (1993).

On November 12, 1997, after the parties failed to settle the case before the deadline, Gnann's attorney sent a letter to Roberson's attorney stating that the deadline to settle the case expired on October 31, 1997, and Roberson would be considered in default if his answer was not filed before Monday, November 17, 1997. Roberson did not answer by November 17, 1997.

Gnann filed a motion for default judgment on November 24, 1997. On that same day, Roberson's counsel filed a motion to withdraw, which was granted in late December. On December 2, 1997, Roberson filed an answer pro se and paid all court costs. On February 26, 1998, the trial court granted default judgment against Roberson on the money had and received count in the amount of $1,362,500. As to the other five counts at issue here, the trial court found Roberson liable, but left the issue of damages pending. See OCGA § 9-11-55 (a). Roberson appeals. We affirm.

1. Roberson contends that the trial court erred in granting Gnann default judgment for money had and received because this is not a money had and received case and that legal theory is inapplicable to the facts of this case.

In essence, Roberson attempts to assert a defense to the claim for money had and received. However, following Roberson's default, Gnann was entitled to a verdict and judgment as if every item and paragraph of the complaint or other original pleading were supported by proper evidence. *Walker v. Hambrick*, 226 Ga. App. 207, 208 (1) (486 SE2d 77) (1997). Entry of a default estops a defendant from offering any defenses which would defeat the right of recovery. *Nova Group v. M. B. Davis Elec. Co.*, 187 Ga. App. 403, 406 (370 SE2d 626) (1988). Roberson's first and fifth enumerations of error are without merit.

2. Roberson contends that because he filed an answer and paid court costs within 15 days of the deadline set by Gnann, it was error for the trial court to grant a default judgment. We disagree.

The complaint was served on May 27, 1997; Roberson had 30 days from that date to answer. See OCGA § 9-11-12 (a). When an answer has not been filed within the time required by the Civil Practice Act, the case automatically becomes in default, unless the time for filing the answer has been extended as provided by law. OCGA § 9-11-55 (a). OCGA § 9-11-6 (b) pertinently provides that when the Civil Practice Act requires that an act be done within a specified time, "the parties, by written stipulation of counsel filed in the action, may extend the period, or the court for cause shown may at any time in its discretion (1) with or without motion or notice, order the period extended if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period,

permit the act to be done where the failure to act was the result of excusable neglect." In determining whether a valid extension has been granted, OCGA §§ 9-11-6 (b) and 9-11-55 (a) must be construed together.

Contrary to Roberson's contentions, the agreement of the parties to extend filing time until the conclusion of settlement negotiations, which was not formalized and filed with the trial court, would not prevent an automatic default. "A request for an extension of time governed by the CPA must be made before the expiration of the original period prescribed by the statute (OCGA § 9-11-6 (b)), and by written stipulation of counsel filed in the action. A private agreement between counsel extending time to file pleadings is not binding except when in compliance with this code section and it is filed with the court." (Citations and punctuation omitted.) *Fadum v. Liakos*, 186 Ga. App. 556-557 (1) (367 SE2d 843) (1988).

In addition, the filed stipulations of the parties were too late to preclude automatic default. Because Roberson failed to file his answer before June 27, 1997, the case was in automatic default. OCGA § 9-11-55 (a). Pursuant to OCGA § 9-11-55 (a), Roberson could have opened the default within 15 days thereafter as a matter of right, but only by filing an answer and paying costs. Roberson did not do this, but instead filed a stipulation on July 9, 1997, in a belated attempt to extend the filing time for his answer until July 15, 1997. A second stipulation to extend filing time was not filed until July 17, 1997 — two days after the first stipulation expired. Thus, even if the first stipulation had been effective, the case would have gone into automatic default as soon as the time extension in the first stipulation expired. The third and final stipulation of the parties purported to extend the filing time through August 4, 1997.

Relying on the November 12, 1997 letter from Gnann's counsel, Roberson contends that his answer was not due until December 2, 1997, 15 days after Gnann's attorney stated he would file a motion for default judgment. This assertion is without merit. The letter merely acknowledged that a private agreement had been entered between the parties that the answer would not be due until discovery discussions ended. It also stated that the established deadline for settling the case expired on October 31, 1997, and Roberson's answer was now overdue. It is of no legal significance that Gnann stated in the letter that he would file a motion for default judgment if Roberson's answer was not filed by November 17, 1997. The letter did not extend the statutory time required for the filing of Roberson's answer or serve to open the default. See OCGA §§ 9-11-6 (b); 9-11-12 (a); 9-11-55 (a).

Since neither the stipulations nor the private agreement was in compliance with OCGA § 9-11-6 (b), Roberson's second enumeration

of error is without merit.

3. Roberson argues that even if he was in default, Gnann impliedly waived the default by his conduct. Roberson cites *Muscogee Realty Dev. Corp. v. Jefferson Co.*, 252 Ga. 400 (314 SE2d 199) (1984); *Hamm v. Willis*, 201 Ga. App. 723 (411 SE2d 771) (1991); and *Ewing v. Johnston*, 175 Ga. App. 760 (334 SE2d 703) (1985), in support of this contention.

The facts of those cases are distinguishable from facts in this case. In *Muscogee Realty*, supra, "the plaintiff allowed the case to proceed to trial without moving that the defaulting defendants' answers be stricken and/or for a judgment on the pleadings because of the late filing of the answers." Id. at 402. In this case, Gnann moved for default judgment even before Roberson filed his answer. In *Hamm*, supra, unlike in this case, the appellant waited to raise the issue of default until appeal and did not move for entry of default judgment before the trial court. Furthermore, none of the waiver factors discussed in *Hamm*, supra at 726 (3), is present in this case. In *Ewing*, supra at 761, as in *Hamm*, the issue of default was not raised until the appeal.

Default judgment is a drastic sanction and is not favored in the law. *Ewing*, supra at 764 (1) (c). However, Roberson's pleading tactics constituted a significant departure from the requirements of the CPA. Under the totality of the circumstances, we decline to hold that Gnann waived his right to assert a motion for default judgment. The record reveals that Gnann consistently attempted to give Roberson an opportunity to file his answer before seeking default judgment, but that he did not allow the case to proceed to trial without asserting his right to a default judgment. We will not invoke waiver against Gnann for his attempts to accommodate Roberson. This enumeration of error is without merit.

4. Roberson argues that the trial court abused its discretion when it denied his motion to open the default judgment, as he had met the requirements of OCGA § 9-11-55 (b). We cannot agree.

A default may be opened if the defaulting party satisfies four conditions and one of the required three grounds. The four conditions are a showing made under oath, an offer to plead instanter, an announcement of ready to proceed to trial, and setting up a meritorious defense. The three grounds are providential cause, excusable neglect, and a proper case. See OCGA § 9-11-55 (b); *Bryant v. Haynie*, 216 Ga. App. 430, 431 (1) (454 SE2d 533) (1995).

While generally the opening of a default rests within the sound discretion of the trial court, "compliance with the four conditions is a condition precedent; in its absence, the trial judge has no discretion to open the default." (Citation and punctuation omitted.) *Forrister v. Manis Lumber Co.*, 232 Ga. App. 370, 373 (3) (501 SE2d 606) (1998).

Examination of Roberson's verified answer and accompanying affidavit, filed on December 2, 1997, and his response to Gnann's motion for default judgment, filed on December 29, 1997, reveals that these documents do not satisfy all of the requirements necessary to open a default judgment. The verified answer does not, standing alone, expressly contain a motion to open default judgment or a legal excuse for late filing. See *Atlanta Med. &c. Corp. v. Financial Software*, 227 Ga. App. 311, 312 (489 SE2d 93) (1997). The unsworn response which purports to contain an alternative motion to open default was filed more than three weeks after the verified answer was filed and does not contain any legal excuse for its delay in filing. Further, neither the answer and its accompanying affidavit nor the response contains an express announcement that Roberson was ready to proceed to trial, as required by OCGA § 9-11-55 (b). Because Roberson failed to comply with all four conditions of § 9-11-55 (b), the trial court did not have discretion to open the default. *Forrister*, supra. We will not reverse the correct judgment of a trial court regardless of the reason therefor. See *Shapiro v. Lipman*, 259 Ga. 85, 86 (377 SE2d 673) (1989).

In view of our holding, we need not determine whether the trial court erred in holding that Roberson's response did not "set out sufficient basis to claim excusable neglect in failing to file an [a]nswer beyond August 4th as required to grant a motion to open default."

5. The trial court did not err in finding that Gnann's claimed damages for money had and received were liquidated. Liquidated damages are an amount certain and fixed, either by the act and agreement of the parties, or by operation of law; a sum which cannot be changed by proof; it is so much or nothing; and that term does not necessarily refer to a writing. *Sellers v. Nodvin*, 207 Ga. App. 742, 746 (3) (429 SE2d 138) (1993). The complaint, as properly construed by the trial court, averred that Roberson was holding $2,725,000 belonging to the plaintiff and that Roberson had entered into a 50 percent attorney fee contract with his client. Thus, the amount of damages sustained was readily ascertainable by mathematical calculation. The trial court simply determined from the complaint the amount of the settlement funds received by Roberson and deducted from that amount the maximum amount to which Roberson could have been entitled as attorney fees. This calculable amount of damages was $1,362,500. "A debt is liquidated when it is rendered certain what is due and how much is due. That certainty need not be contemporaneous with the agreement out of which it results." (Citations and punctuation omitted.) *Stinson v. Dept. of Human Resources Credit Union*, 171 Ga. App. 303, 304 (2) (319 SE2d 508) (1984). In this case, "the exact amount due is easily ascertainable by simple mathematical calculation, and the damages are liquidated. [Cit.]" *Galanti v.*

*Emerald City Records*, 144 Ga. App. 773, 774 (1) (242 SE2d 368) (1978).

*Judgment affirmed. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

<span style="letter-spacing:0.1em">DECIDED NOVEMBER 4, 1998</span> 

*David Roberson*, pro se.

*Karsman, Brooks & Callaway, Dana F. Braun, Donald C. Bowman, Jr., Edenfield, Cox, Bruce & Classens, Gerald M. Edenfield, Susan W. Cox*, for appellee.